UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Adelvani Martins de Souza, Ana Paula Do Nascimento, N.H.M.D.N., N.M.D.N., <br><br> Petitioner, <br><br> v. <br><br> PATRICIA HYDE, Acting Director of Boston Field Office, United States Immigration and Customs Enforcement, et al., <br><br> Respondents. | Civil Action No. 25-cv-11616-IT |

**<u>RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241</u>**

Respondents by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to the Petition for Writ of Habeas Corpus filed by Petitioner Adelvani Martins de Souza ("Petitioner") and his family members. Doc. No. 1, Petition for Habeas Corpus ("Petition").[1]

Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases and this Court's Order Concerning Service and Stay of Transfer or Removal.[2] Though this Response, Respondents additionally provide notice of intent to transfer

---

[1] Respondents have replied to this Petition with all deliberate speed in light of the Court's Order requiring a response within 48 hours and to allow transfer of Petitioners' to a dedicated family residential center.

[2] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Petitioners to the South Texas Family Residential Center in Dilley, Texas as there are no family residential facilities within Massachusetts at which ICE can detain family members together.

## **INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Petitioners fail to carry their burden that their detention by U.S. Immigration and Customs Enforcement ("ICE") for purpose of effectuating their final order of removals violates the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution.

Petitioners are detained pursuant to 8 U.S.C. § 1231(a) as they have been ordered removed from the United States by an Immigration Judge ("IJ") and have exhausted their administrative appeals before the Board of Immigration Appeals ("BIA"). They have filed a petition for review ("PFR") with the U.S. Court of Appeals for the First Circuit to seek judicial review of the BIA's affirmance of the IJ's denial of a Motion to Reopen. The First Circuit, on June 5, 2025, denied Petitioner's Emergency Motion for Stay of Removal. *See* Order of Court, attached as Exhibit A. Petitioners' detention for purpose of effectuation of their removal orders is authorized by statute and they have no entitlement to release aside from return to their home country of Brazil.

Petitioners seek an order from this Court staying ICE's effectuation of their removal orders while the First Circuit considers their PFR and while U.S. Citizenship and Immigration Services ("USCIS") adjudicates a separately filed application. This Court, however, lacks jurisdiction to interfere with ICE's removal Petitioners to their home country per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute

removal orders." *Compere v. Riordan,* 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (Explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress.").

As such, this Court must lift its order prohibiting ICE to transfer Petitioners outside this District so they can be housed at the South Texas Family Residential Center in Dilley, Texas and must also deny Petitioners' request for relief as they have not satisfied their burden to demonstrate that they are in custody in violation of the Constitution or laws of the United States.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the Petition, Petitioners entered the United States without inspection in 2021 and were thereafter placed in removal proceedings. Doc. No. 1, ¶ 1. Petitioners applied for asylum with assistance of counsel—an IJ denied their applications in 2022 and the BIA affirmed the denial of the IJ's decision in October of 2023. *Id.* Petitioners then filed a motion to reopen with the BIA which was subsequently denied by the BIA in November of 2024. *Id.* Petitioners then filed a PFR with the First Circuit. *Id.* The First Circuit denied Petitioner's Emergency Motion for a Stay of Removal on June 5, 2025. Exh. A.

Petitioners assert that they have also filed a T-visa petition with USCIS which remains pending. Doc. No. 1, ¶ 2. On June 4, 2025, Petitioners were detained by ICE. *Id.*, ¶ 4. Petitioners filed this Petition on June 4, 2025 to challenge their custody and request this Court order their release from custody and to stay their removal from the United States. *Id.*, ¶ 6.

## ARGUMENT

ICE's detention of Petitioners is authorized by statute and regulation and does not offend the Constitution. Additionally, this Court lacks jurisdiction to interfere with ICE's effectuation of

3

Petitioners' removal orders even with their PFR pending before the First Circuit and their T visa petitions pending adjudication with USCIS. As such, this Court must deny the Petition.

**A.     Petitioners are Lawfully Detained Pursuant to 8 U.S.C. § 1231**

ICE's detention authority stems from 8 U.S.C. § 1231(a) which provides for the detention and removal of aliens with final orders of removal. By statute, ICE is required to detain an individual for 90 days post-removal order. *See* 8 U.S.C. § 1231(a)(2). Because Petitioners prior orders of removal were final in apparently 2023, Petitioners are now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). However, 8 U.S.C. § 1231(a)(6) allows the government to detain an alien ordered removed beyond the removal period if the individual is inadmissible under § 1182 (that is the case here as Petitioners were neither admitted nor paroled in the United States upon entry), removable under § 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), or has been determined to be a risk to the community or unlikely to comply with the order of removal. This statute provided ICE with the authority to detain Petitioners on June 4, 2025 as they are inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i) as Petitioners were neither admitted nor paroled in the United States upon entry.

ICE has statutory authority to detain Petitioners to effectuate their removal orders from the United States and they are not entitled to a bond hearing or release as Section 1231(a)(6) does not contemplate such process. The Supreme Court, in *Johnson v. Arteaga-Martinez*, answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). The Court answered that question definitively, holding

4

that Section 1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" … "directs that we answer this question in the negative." *Id*. at 581.

As such, Petitioners' claim that they are unlawfully detained and entitled to release is foreclosed by statute and Supreme Court precedent.

**B.    Petitioners' Statutorily Authorized Detention is Constitutional.**

Petitioners' claim that their detention violates the Fifth Amendment's Due Process Clause is similarly without merit as their detention comports with the framework set forth by the Supreme Court in *Zadvydas* through which a due process challenge to post-final order detention must be analyzed. Petitioners do not face indefinite detention and will be released to Brazil in the immediate future as ICE routinely effectuates removals to Brazil.

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does.

To set forth a Constitutional violation for Section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (Explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied."); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (Explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (The

5

*Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioners' Due Process challenge fails under their present circumstances because any *Zadvydas* challenge cannot be raised until Petitioners have been detained for six-months in post-final order custody and they have been detained for one day. *See Rodriguez-Guardado,* 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332–33 (11th Cir. 2021) (Explaining that "[i]f after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable

6

under *Zadvydas*.).

Petitioners also seem to suggest, without support, that their detention for purpose of effectuating removal violates the Due Process Clause because of their pending PFR and Emergency Motion for Stay with the First Circuit. However, the First Circuit denied their Emergency Motion today and therefore no Due Process violation exists for ICE to proceed with effectuation of their final orders of removal.

C. **This Court Lacks Jurisdiction to Stay Petitioners' Removal from the United States.**

Petitioners request this Court to enter an order staying their removal until USCIS decides their T-visa application. This Court is without jurisdiction to offer such relief as 8 U.S.C. § 1252(g) precludes a district court from staying orders removal. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v.*

7

*Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf''t,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018) (same); *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

Moreover, § 1252(g) bars claims arising from "brief detentions" for purpose of effectuation of removal orders which is the case here. *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023); *see also Tazu v. AG United States*, 975 F.3d 292, 297-99 (3d Cir. 2020).

The fact that Petitioners are seeking a stay of removal from this Court while the First Circuit considers his PFR or while USCIS adjudicates their T-visa application does not change the analysis; section 1252(g) still bars jurisdiction for this Court to order a stay. Petitioners had the opportunity to seek a stay of removal with the First Circuit and the First Circuit denied such motion. Petitioners cites no authority, because none exists, for this Court to entertain another stay of removal request so they can remain in the United States while the First Circuit considers their PFR.

Courts also routinely deny habeas petitions seeking stays of removal to apply for other

immigration benefits or applications, including T-visas. *See Arely Westley a/k/a Wilson Amilcar Velasquez-Cabellero v. Harper, et al.,* No. 25-cv-229-BWA, 2025 WL 592788 (E.D. La. Feb. 24, 2025) ("*Westley*"). Like here, the petitioner in *Westley* asked the Court to stay her removal while USCIS adjudicated her T-visa application. In rejecting the petitioner's claims, the Court held that an order staying removal until the petitioner's T-visa application is adjudicated falls outside the Court's jurisdiction under § 1252(g). *Id.,* at *4. *See also Suarez-Reyes v. Williams,* No. CV-20-01222-PMX-MTL-(JFM), 2020 WL 3414781, at *2 (D. Ariz. June 22, 2020) (petitioner's claim that he will be deprived of an opportunity to have his T-visa applications heard at a meaningful time and manner if removed is insufficient to show his due process claim is not precluded by § 1252(g)); *Marcelo Rojas v. Moore,* No. 19-cv-20855, 2019 WL 3340630, at *1 (S.D. Fla. Mar. 26, 2019) (Court agreed that no T-visa applicant has a constitutionally protected liberty interest in remaining in the United States); *Viera v. McAleenan,* No. 19-cv-05112-PHX-DWL-IZB, 2019 WL 4303417, at *4 (D. Ariz. Sept. 11, 2019) (petitioner alleges no facts to support contention that USCIS has a "clear nondiscretionary duty" to adjudicate a T-visa application before an applicant is removed).

Courts within this district and elsewhere also routinely held that Section 1252(g) bars jurisdiction to enter a stay of removal in other circumstances in which an individual seeks more time to apply for different forms of immigration relief. *See, e.g., Compere*, 368 F. Supp. 3d at 170 (D. Mass. 2019) (court barred from entering stay even though petitioner had application pending); *Viana*, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018); *E.L.F. v. Prim,* 986 F.3d 959, 964 (7th Cir. 2021) (petitioner's challenge to removal while she has a pending application for relief therefrom falls squarely in the path of § 1252(g)); *Garcia-Herrera v. Asher,* No. 13-35435, 585 Fed. App'x 439, 440 (9th Cir. Oct. 6, 2014) (finding that ICE's decision not to delay removal

pending the adjudication of petitioner's DACA application constitutes a challenge to ICE's decision to execute a removal order and is barred from review under § 1252(g)).

Moreover, Petitioners have no right to a stay of removal under federal regulation, as the mere submission of an application seeking T nonimmigrant status has no effect on ICE's authority or discretion to execute a final order of removal. 8 C.F.R. § 214.204(b)(2)(i) ("The filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal…."). *See also Nicholas L. L. v. Barr,* No. 19-cv-02543-ECT-TNL, 2019 WL 4929795, at *5–6 (D. Minn. Oct. 7, 2019) (an alien subject to a final order of removal, deportation, or exclusion may file an application for T-1 nonimmigrant status directly with USCIS. However, the filing of an application for T nonimmigrant status has no effect on DHS' authority or discretion to execute a final order of removal, although the alien may request an administrative stay of removal pursuant to 8 C.F.R. § 241.6(a)). A stay of removal is automatically granted *only* once USCIS determines that T-visa application is *bona fide.* 8 C.F.R. § 214.204(b)(2)(iii). Petitioners makes no claim that USCIS has made a *bona fide* determination of their T-visa application and any contention that the mere filing of an application runs directly contrary to the governing regulations. 8 C.F.R. § 241.204(b)(2).

At bottom, Petitioners had ample opportunity to seek stays of removal from the appropriate judicial and administrative forums. Congress did not provide authority to this Court to consider such stay requests, and in fact, specifically stripped district courts of the ability to interfere with ICE's execution of removal orders. As such, Petitioners' request for a stay of removal to be issued from this Court must be denied.

Additionally, the relief sought by Petitioners—a stay of removal so as to remain in the United States while an application is pending—is relief that is unavailable in habeas. This is not

a challenge to the legality of Petitioners' detention. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

But instead of simple release, Petitioners seek a full stop to removal. This is not the type of relief that the Supreme Court found to be subject to habeas review. *See Thuraissigiam*, 140 S. Ct. at 1970 (holding that the relief sought, which did not include release, fell "outside the scope of the common-law habeas writ"). In *Thuraissigiam*, the petitioner did not seek "simple release," and if he had sought proper habeas relief, it would take the form of release "in the cabin of a plane bound for [the designated country]." *Id*. at 1970. Other circuits have followed this principle. *See, e.g.*, *Tazu*, 975 F.3d at 300 ("And Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound for Bangladesh.'") (brackets omitted); *E.F.L.*, 986 F.3d at 965-66 (holding that a petitioner could not invoke an alleged Suspension violation when a petition does not contest the lawfulness of restraint or seek release from custody); *Rauda*, 55 F.4th at 780 (same as *E.F.L.*).

Though Petitioners claims to seek release from detention, in reality, Petitioners seek to remain in the United States to pursue other immigration benefits. The Supreme Court has taken a "narrow view of habeas relief in the immigration context, which supports [a] reluctance to extend habeas relief to aliens who are released from detention." *See Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020) (citing *Thuraissigiam*, 140 S. Ct. at 1963).

D.     **This Court also Lacks Jurisdiction to Consider Petitioners' Claim that Removal Violates the Administrative Procedures Act.**

Petitioners asserts without support that their removal from the United States while their PFR is pending violates the Administrative Procedures Act. Alleging an APA claim does not change the landscape for § 1252(g) purposes. *See Tazu,* 975 F.3d at 298 (if claims of Due Process and APA are of consequence, it "would gut § 1252(g) because future petitioners could restyle any challenge up to the covered actions … as a challenge to the Executive's general lack of authority to violate Due Process, equal protection, the APA or other federal laws."); *E.F.L.,* 986 F.3d at 964 (noting that restyling claims would make § 1252(g) a "paper tiger"); *Rauda v. Jennings,* 55 F.4th 773, 778 (9th Cir. 2022) (regardless of how petitioner frames it, his challenge is to the Attorney General's exercise of his discretion to execute his removal order, which the court has no jurisdiction to review).

## CONCLUSION

For the above reasons, Petitioners' assertion of unlawful detention in violation of statute, regulation, and the Constitution fails. As such, this Court should deny their request for release and vacate its order enjoining ICE from transferring and removing Petitioners from the United States pursuant to their final orders of removal.

|  |  |
|---|---|
|  | LEAH B. FOLEY<br>United States Attorney |
| Dated: June 5, 2025    By: | */s/ Mark Sauter*<br>Mark Sauter<br>Assistant United States Attorney<br>United States Attorney's Office<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>Tel.: 617-748-3347<br>Email: mark.sauter@usdoj.gov |

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  June 5, 2025 By: */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney